## Callender & Co. *versus* Robinson.

A., B. and C. entered into an agreement, whereby A. and B. were to have one-half of the net profits, after deducting necessary expenses, of a certain business which was to be carried on in the name of C. alone, and they permitted C. to have the ostensible ownership of the whole property, and he obtained credit on the strength of his presumed ownership. The property was seized in execution on a judgment against C. alone: *Held*, that A. and B. could not prevent its sale for C.'s debts.

November 15th 1880.  Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.  SHARSWOOD, C. J., absent.

Error to the Court of Common Pleas of *Butler county :* Of October and November Term 1880, No. 320.

Replevin by S. N. Callender and P. A. Laffer, trading as Callender & Co., late partners with John F. Denny, under the firm name of John F. Denny, against Thomas Robinson.

S. N. Callender and P. A. Laffer, partners as Callender & Co., engaged in the wholesale drug business in the city of Meadville, Crawford county, Pa., on the 5th of November 1872, entered into an agreement in writing with John F. Denny, under which Denny was to carry on the retail drug business in Oil City, Venango county, Pa., under the firm name of John F. Denny.

The agreement was as follows :—

. "Article of agreement made and entered into this 5th day of November 1872, between Callender & Co., of Meadville, Pa.,

[Callender *v.* Robinson.]

of the first part, and John F. Denny, of Oil City, of the second part, for the purpose of carrying on the retail drug business in Oil City, Pa.

The party of the first part agree to furnish the necessary stock of drugs, patent medicines, sundries and appliances for the said business at prices reasonable to the trade, charging no interest on the partnership account herein represented.

The party of the second part agrees to conduct the said business to the best of his ability and fidelity, procuring his supplies from the parties of the first part.

It is mutually agreed that the business in Oil City shall be conducted under the style and firm name of "John F. Denny," that the charges for rent, fuel, insurance, extra help, freight, &c., shall be first paid out of the receipts of the business, that only such debts shall be contracted in the name of this partnership as are necessary to the proper accomplishment of the intention thereof as herein expressed.

It is also agreed that one-half of the net profits of this partnership, after deducting necessary expenses, shall be the property of the said party of the second part for services rendered, and the other half of the net profits shall belong to the said party of the first part in full for their investment in said partnership.

It is also agreed that at the close of this partnership, the stock furnished therefor shall revert to and become the property of the said party of the first part.

It is also agreed that there shall be no removal of stock or change of place of business, or manner of business, without the consent thereon written of both parties to this agreement.

It is further agreed that this partnership shall expire one year from this date, viz.: on the 5th day of November 1873.

Witness:                    CALLENDER & Co., first part.
H. N. ARNOLD.               JOHN F. DENNY, second part.

By mutual agreement, the place of business above specified was changed to Butler, Pa., May 1st 1873, and the stock of goods removed from Oil City to Butler, other parts of this agreement remaining the same.

Witness:                    CALLENDER & Co
WM. GOODWIN.                JOHN F. DENNY."

When the stock was removed and the store opened in Butler, the lease, sign, advertisements, drug license, &c., were all in the name of John F. Denny.

On July 22d 1873, John Berg & Co., bankers, entered a judgment on a note for $350 against John F. Denny and D. Denny & Co., and on same day issued fi. fa. No. 173, October Term 1873. On July 23d 1873, the sheriff levied on "all the right, title, inter-

est and claim of John F. Denny " in the drug store. This note was given to Berg & Co. to renew a note which Denny had discounted at Berg & Co.'s bank in October or November 1872, and before he was in business with Callender & Co. in Oil City. On the 24th of June 1873, Thomas Robinson became endorser for Denny on a note for $300, due in sixty days (August 24th 1873) at the Producers' Bank.

On July 24th 1873, after the writ of Berg & Co. had been issued, Robinson obtained from Denny a judgment note for $300, and on July 25th entered judgment on the same and issued execution, and the sheriff marked the same levy as had been made on the Berg & Co. writ and dated it the same.

On August 2d 1873, the goods levied on were sold to Robinson at the sheriff's sale for $493.10, after due notice as to the title thereto in Callender & Co. under the article of agreement. Robinson took possession of the store and contents, and this action of replevin was brought on August 5th 1873, to recover the possession of the property.

At the trial, the defendant's fifth point with the answers of the court thereto were as follows:—

5. That Callender & Co., the plaintiffs, having put Denny in a position which enabled him to obtain credit on the strength of the apparent ownership of the store or the strength of his business, they could not, when the goods were levied on by the creditors of John F. Denny, come in and set up or claim that they were partners, and that only Denny's interest in the establishment could be sold; that they would be estopped therefrom, and they cannot recover.

"Ans. This depends on how the credit was obtained by Denny. If for the purpose of the business, then plaintiffs, having kept their interests in the firm secret, could not prevent a sale of the goods as the property of John F. Denny, that being the firm name. That is, if the debts were for money to be used in the business, then we think John F. Denny, under the powers in this agreement, and the fact that the partnership was kept secret, could give an obligation under which the whole title to the goods could be sold and would pass to the purchaser."

In the general charge, the court, inter alia, said:—

"What makes this question somewhat difficult, somewhat complicated, is the fact that this partnership was in the individual name of John F. Denny. The fact of Callender & Co. being partners was kept a secret. They did not make that known to any one. No one in Butler seemed to know that there was any other person interested in this store but John F. Denny alone. We have received evidence, under objection, of John F. Denny's declarations from time to time to persons dealing with him, that no other person was interested in the store, and that he owned it himself. We

[Callender *v.* Robinson.]

have also received evidence that at the time Denny obtained Robinson's endorsement on the note for which this note was afterwards given, that he stated that he was obtaining that money for use in his business.  There is a difference in law between where parties carry on business in the individual name of one of the members of the firm, keeping their interests secret, and where it is made known.  Where the interest is kept secret, the power of the partner carrying on the business is greater than where all persons having interests are known to parties dealing, or can be easily ascertained by parties dealing with the firm. In this case, from the evidence, there was no means by which Robinson or any one dealing with Denny could have obtained information as to there being other parties interested in the firm' except Denny, and when they applied to Denny for that information, he stated that there were no other parties interested in the store. Therefore, from the fact that Callender & Co. put Denny in that position, and there was no other person from whom to obtain that information except Denny, and if the jury believe he did not give the information when demanded, that there were other persons interested, but claimed to own the store himself individually, then we think the law gives to third parties dealing with him whatever rights they would be entitled to if the fact that other parties were interested could have been known, or with reasonable diligence and inquiry ascertained by parties dealing with him. * * *

" There is a principle laid down which we think sustains our position here in a measure in Parsons on Partnership, section 360, chapter 10 : ' But a distinction seems to be taken in this respect between the case of a dormant (that is, secret) partner and a known partner.  Thus if a man in business have a dormant partner, and a creditor of the first sue him and attach his goods, this attachment shall not be postponed to a later attachment by another creditor who discovers this unknown partner and makes him defendant.' That seems to us, in a measure, to sustain our position.

" If Robinson had a judgment against John F. Denny, on a claim that the money raised by that endorsement was for use in his business, and not knowing any other partner there, that judgment could not be set aside in favor of a man who knew there were other partners and had obtained judgment against them.  The same principle, if carried out, covers a sale of the goods as against a sale of the individual interest of the partner.  We think, too, that there is a difference, and we might as well mention that a different principle applies between a writ against the goods alone and a suit against the partner.  Now, if Mr. Daniel Denny had sued this firm, and Robinson had sued the firm—sued Callender & Co. and John F. Denny—they would be bound to show, in order to hold Callender & Co., that they were partners, and they would be bound to show that this debt was a partnership debt ; but

where there is a sale of the goods only of the partnership, then, we think, a writ against one partner alone—the ostensible partner— the partner known to the world, might, in certain cases, pass title to these goods, although it would not hold other members of the firm. But if suit had been brought against the individual, they would have been compelled to make out a different kind of case from that where the party merely claims to levy on the goods of the firm.

" We think, under this agreement, where it is contemplated that two of the persons should be secret partners, these secret partners should not be given the title, where important authority was given to Denny to contract debts in the name of the firm, which was also the individual name of John F. Denny, that they would have if the other partners were known. It is true they tried to restrict the contracting of debts to only those necessary to carry on the business, but they could not restrict him from contracting debts individually, and, having placed him in that position, he has greater power, having put him in possession of the goods, and if he dealt with the public as though he was sole owner of the store, therefore, his powers were greater than if the other partners had been known."

The verdict was for defendant, when plaintiff took this writ and alleged that the court erred, inter alia, in the answer to the above point and the foregoing portion of the general charge.

*John M. Miller, Lewis Z. Mitchell* and *John J. Henderson,* for plaintiffs in error.—1. We contend there was but one question in this case, as the court below admitted, and that was whether the sheriff's sale to Thomas Robinson carried only Denny's interest in the firm of John F. Denny, or the title of the firm, and therewith the right in Robinson to the possession of the goods; and, to determine this question, the court left it to the jury to ascertain the character of the loans to, or endorsements for Denny—whether to him individually or to the firm. The frequent, uncalled for, and most pointed references in the charge to Denny's being contradicted, and to the alleged claim of defendant that the agreement was a fraud, &c., together with numerous statements that the arrangement between Callender & Co. and Denny was kept a secret, made up the greater portion of the charge, and left the case in such shape that the minds of the jury were necessarily strongly impressed with the idea that the court had concluded that the plaintiffs could not, and should not, recover.

*Charles McCandless,* for defendant in error.—The possession of personal property must follow the ownership as against creditors. The plaintiff could not sell Denny the goods on credit and permit him to go into possession of them, and to hold them out to the

[Callender v. Robinson.]

world as his own, and obtain credit on the faith of them, and hold title to the goods as against Denny's creditors.   It is a fraud in law.

The plaintiffs only claim concurrently with Denny, the plaintiffs claiming title until the goods were paid for.   Denny taking possession and treating them as his own, it is a fraud in law, and if it was a partnership, such as is claimed by the plaintiff, between them and Denny, it is either exclusive possession by Denny, or concurrent possession of both, and either are fraudulent in law.   The plaintiffs, by their acts, enabled Denny to hold himself out to the world as the owner of these goods, by which he got credit and incurred indebtedness, and now the plaintiffs or creditors must sustain a loss.

The testimony of Robinson is that when Denny got his endorsement, the money was to be put in his business as druggist.

The judgment of the Supreme Court was entered November 26th 1880,

PER CURIAM.—In order to sustain this judgment it is not necessary to establish that the plaintiffs in error were guilty of any specific fraudulent intent at the time they entered into partnership with Denny.   While they were in fact in partnership with him under an agreement whereby they were to have one-half of the net profits after deducting necessary expenses, yet the business was to be carried on in the name of Denny alone.   They did not file in the office of the prothonotary any statement under the Act of 14th April 1851, Purd. Dig. 1119, giving the names of the members of the partnership, but permitted him to have the ostensible ownership of the whole property, whereby he obtained credit on the strength of his presumed ownership.   He held himself out in the community as the sole owner of the stock of goods.   As such he bought and sold, and obtained credit.   Under a fair charge the jury has found that at the time Denny obtained the money for which the judgment was recovered, and by virtue of an execution thereon the property was sold, he represented that he wanted it to put into his business.   The plaintiffs having thus held him out to the world as the sole owner of the property in his possession, and having permitted him to claim it as his own and obtain credit and contract debts by reason of his possession and claim thereto, why shall not that property be liable for the debts thus contracted.   To hold otherwise would be to permit the secret contract of the plaintiffs to work a fraud on innocent and confiding creditors.   We deem it unnecessary to discuss the assignments separately.

Judgment affirmed.